IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>HAUWA AL-HASSAN,<br>[DOB: 05/16/1969]<br><br>           Defendant. | Case No.<br><br>**COUNT ONE**<br>**18 U.S.C. § 641**<br>**Theft of Government Property**<br>NMT 10 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>Allegation of Criminal Forfeiture<br>18 U.S.C. §§ 982(a)(1) and (a)(2)(A)<br><br>$100 Mandatory Special Assessment on Each Count<br><br>Order of Restitution |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

At all material times:

## Introduction and Background

1.    Hauwa Al-Hassan (Al-Hassan), defendant herein, was a resident of Raymore, Cass County, Missouri.

2.    Al-Hassan owned and ran a child daycare center in Jackson County, Missouri, called Guidance Child Care Center, LLC (Guidance). The address for Guidance is 8101 East Bannister Road, Kansas City, Missouri 64134.

3.    Guidance filed articles of organization with the State of Missouri in 2009. In the articles of organization, Al-Hassan was listed as both the registered agent and the organizer for Guidance.

4. As part of Al-Hassan's duties, she established and maintained business bank accounts, bought and delivered business supplies, managed the employees, picked up and delivered children to Guidance and she established and managed the business relationship between Guidance and the State of Missouri to receive state funding for Guidance.

5. Childcare is licensed through the Missouri Department of Health and Senior Services (DHSS). Clients are approved for childcare based on income and eligible need, education, training or employment. Approval comes from the Family Services Division (FSD) at a county level. Once approved, the client selects a childcare provider. The provider bills monthly, using an online system, Child Care Online Invoice System (CCOIS). Providers are contracted with the Children's Division of the DHSS. Providers bill for each Child Care and Development Fund (CCDF) subsidy child in attendance.

**Purpose of the Scheme to Defraud**

6. From at least on or about June 2011 and continuing to June 2016, Al-Hassan intentionally devised a scheme and artifice for the purpose of obtaining money for herself or others by sending false childcare claims for Guidance Child Care Center to the Government by billing the HHS, Child Care and Development Fund (CCDF) grant program for more hours and children than actually attended the daycare center(s).[1]

**The Scheme and Artifice**

7. On May 3, 2010, Al-Hassan signed a contract with the Missouri Department of Social Services to operate Guidance Child Care Center as a licensed childcare center providing childcare services to low-income families. The contract listed Al-Hassan as the owner of Guidance Child Care Center, LLC. The agreement was renewed on May 6, 2015, to cover

---

[1] The Child Care Provider Agreements from the State of Missouri show Guidance Child Care Center was in operation from July 2011 to present. Guidance has been in business since 2009.

2

Case 4:16-cr-00204-DGK   Document 1   Filed 06/29/16   Page 2 of 8

Guidance through June 30, 2016.

8. Guidance participates in the electronic claims submission program through the State of Missouri for payment related to childcare services. These claims are paid from the CCDF funds. CCOIS allows for claims to be submitted electronically via a user name and password. Payment for these claims is managed through direct electronic funds transfer to a designated bank account. Al-Hassan used her email address, jikarmusa@gmail.com, and her Social Security number as the tax ID to login to the CCOIS system and submit claims.

9. As part of the CCDF program, each childcare provider in Missouri is required to keep an attendance record (timesheet) for each child billed to the CCDF program. The timesheets have a section to put the date of childcare and the times the childcare began and ended. The parent must initial next to this information. At the bottom of the timesheet, both the parent and the childcare provider must sign, certifying the hours and days of care that were provided to the child whose name is on the sheet. The provider then goes online and submits an invoice to the State of Missouri, billing the state for the total number of children that fall into each category (full-time day, half-time day, part-time day, etc.).

10. The timesheets are handwritten. The state largely relies on the honor system when reviewing and submitting the total number of children billed. Only during an audit will the state compare the timesheets submitted to the invoices billed to and paid by the state.

11. Since 2013, Guidance has been audited formally or informally by the state on four occasions. Each audit found many hours fraudulently billed for childcare services.

12. On August 14, 2014, the state conducted a review of Guidance's billing for November 2013 and December 2013. Timesheets for that period were collected and compared to the number of full-time days and evenings, half-time days and evenings, and part-time days

and evenings Guidance claimed were paid for during each of the two aforementioned months. Guidance submitted bills for, and was paid for, $2,578.41 worth of services not rendered during the two months audited.

13. During the same August 2014 audit, auditors found on November 14, 15, 19, 21, 22 and 29, 2013, Guidance Child Care and another provider billed the state for the childcare of the same child, at overlapping times. The signature of the "parent" was different on timesheets submitted.

14. The next billing discrepancy occurred during the September 2014 billing period. No formal audit was conducted, but a red flag was raised by the electronic billing system when Guidance Child Care billed the state for four children not receiving childcare services from Guidance.

15. The last known audit occurred in April 2015. During this audit, employees at the DSS reviewed the attendance records and billings submitted to the state for September 2014 and January 2015. It was again determined there was a large discrepancy between the timesheets submitted and the billings made to the state. Guidance billed for, and was paid for, $1,159.55 for services not rendered. On May 1, 2015, the DSS mailed Guidance Child Care Center a letter of non-compliance.

16. Based on Guidance's history of billing for services not rendered and sharing of employees and billed children with other daycares believed to be running fraud schemes on the CCDF program, two pole cameras were installed near Guidance from February 11, 2016 – March 20, 2016. One camera focused on the front doors of Guidance; the second camera showed the parking lot and rear doors. All doors in and out were covered by a pole camera.

17. Timesheets submitted with the billing were compared with the information on the

timesheets to the children seen on the pole cameras being dropped off and picked up from Guidance during that time. There were significant discrepancies between the timesheets submitted and the pole camera footage.

18. There were more billing discrepancies noted during the review of the pole camera footage, but for the purposes of this indictment, only a sample of five children showing a pattern of fraudulent billing has been included, rather than every single known instance of billing for services not rendered by Guidance.

19. Based on a review of childcare claims between 2011 and 2016, HHS agents determined at least $100,000 has been fraudulently billed by Guidance in connection with this scheme.

### Additional Al-Hassan Background

20. Al-Hassan is a Nigerian immigrant. She is known to have a U.S. Passport and Nigerian Passport and she travels internationally. Evidence indicates Al-Hassan is using her passport(s) to travel to Nigeria to teach others who plan to return to the United States how to run CCDF fraud schemes.

21. On Tuesday, May 10, 2016, SA Jon Weishaar was called by United States Customs and Border Protection Officer Robert Holthouse (Holthouse). That same day, Al-Hassan flew from Nigeria to Chicago, Illinois. She arrived on American Airlines Flight 91 from London Heathrow Airport to Chicago O'Hare International Airport. Upon her arrival to the United States, she was questioned at customs by Holthouse. Holthouse immediately called SA Weishaar. During his phone call with SA Weishaar, Holthouse stated Al-Hassan was carrying business startup paperwork, including likely customer lists. Al-Hassan told him she is an "ECCED" consultant and was planning on starting two businesses. In Nigeria, she planned to

start a childhood development center and teach others how to run childcare centers. Al-Hassan stated the second business she is starting was another childcare center in the United States.

22. Based on her own admissions and recent travel, there is reason to believe Al-Hassan is involved in a fraud scheme with international implications. Specifically, once a fraud scheme is successfully executed in the United States, the money is either wired by traditional means, or hawala[2], or hand carried from the United States back to the country where the immigrant was born.

23. On December 20, 2015, $23,000 in cash was hand-carried out of the United States to Nigeria by MB, an individual on a visa using Al-Hassan's residential address, which is also the Guidance Childcare Center's main office address.

## Count One
**(Theft of Public Money)**

24. The allegations contained in Paragraphs One through Twenty-Three of this Indictment are re-alleged and incorporated by reference.

25. On or about June 2011, to on or about June 2016, in the Western District of Missouri and elsewhere, the defendant, Hauwa Al-Hassan, owner and CEO of Guidance Childcare Center, as part of a single continuing scheme involving Health and Human Services (HHS), did willfully and knowingly steal, convert to her own use, and purloin goods, property and money of the United States having a value in excess of $1,000, and the defendant did so with intent to deprive the owner of the use or benefit of the money so taken. Specifically, the defendant intentionally reported false attendance of children at Guidance Childcare Center, filing false daycare claims in order to receive security and income benefits to which she was not entitled. The defendant's acts to obtain those payments constitute theft and unlawful conversion

---

[2] Hawala is an Islamic informal value transfer system used to transfer currency from one individual to another individual who lives overseas.

of money belonging to the United States.

All in violation of Title 18, United States Code, Section 641.

## Allegation of Criminal Forfeiture

The allegations contained in Paragraphs One through Twenty-Three and Count One of this Indictment are re-alleged and incorporated by reference for the purpose of alleging a forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7) and 1961(1) and Title 28, United States Code, Section 2461.

The defendant named herein shall forfeit to the United States all property, real and personal, constituting and derived from any proceeds defendant obtained directly and indirectly as a result of the violation incorporated by reference in this allegation and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of the violation incorporated by reference in this allegation, including but not limited to the following:

## Cash Proceeds and Money Judgment

Approximately $100,000 in United States Currency, in that at least this sum, in aggregate, was received by the defendant in connection with the allegations set forth in Count One and is traceable thereto.

## Substitute Assets

If any of the above-described forfeitable property of the above-named defendant, as a result of any act or omission of the defendant -

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to or deposited with, a third person;

(3)  has been placed beyond the jurisdiction of the Court;

(4)  has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(2), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7) and 1961(1) and Title 28, United States Code, Section 2461, Federal Rules of Criminal Procedure.

                                                A TRUE BILL.

                                         /s/ Carla F. Eye
                                      FOREPERSON OF THE GRAND JURY

/s/ Jane Pansing Brown
Jane Pansing Brown
Assistant United States Attorney


Dated 6/29/16
       Kansas City, Missouri